IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nazreth Derboghossian,<br><br>    Petitioner,<br><br>v.<br><br>Charles DeRosa,<br><br>    Respondent. | No. CV 14-01289 PHX GMS (MEA)<br><br>**REPORT AND RECOMMENDATION** |

**TO THE HONORABLE G. MURRAY SNOW:**

  Petitioner, proceeding in this matter pro se, docketed a petition pursuant to 28 U.S.C. § 2241 on June 10, 2014. Petitioner is detained by the United States at the detention center in Eloy, Arizona. Petitioner docketed an "emergency" amended petition (Doc. 3) on June 18, 2014. Petitioner asserts, *inter alia*, that "The Executive Office of Immigration Review has no jurisdiction and authority to deport me as an American citizen in violation of my Fifth Amendment Due process Clause." Respondent was ordered to answer the petition on August 11, 2014. See Doc. 4. Respondent, who asserts he is not the correct respondent in this matter, docketed an answer to the petition on September 3, 2014. See Doc. 9. Petitioner docketed a reply (Doc. 20) to the answer to his petition on December 18, 2014.

  Petitioner, Mr. Nazreth Derboghossian, was born in Syria on August 4, 1959. See Doc. 3. See also Answer, Attach. A. Petitioner's father Nubar Derboghossian and mother Zarouhi Minassian are both natives of Syria and both parents are naturalized United States citizens. See Answer, Attachs. B, D, E. On August 11, 1969, the former

Immigration and Naturalization Service ("INS") admitted Petitioner, who was then ten years old, his parents, and his younger siblings to the United States at New York, New York, as immigrants under the classification "NP1," i.e., as "nonpreference" immigrants. Id., Attach. B & Attach. C.

On May 6, 1977, three months before Petitioner's eighteenth birthday, Petitioner's father Nubar filed a Form N-400, "Application to File Petition for Naturalization" with the INS. Id., Attach. D (Immigration Documents for Nubar) at DERICE-000019.[1] On November 18, 1977, after Petitioner turned eighteen on August 3, Petitioner's mother filed her Form N-400, "Application to File Petition for Naturalization" with the INS. Id., Attach. E (Immigration Documents for Zarouhi) at DER-ICE-000031). On January 19, 1978, Petitioner's parents attended their naturalization interviews and on March 1, 1978, the INS scheduled them for a naturalization hearing on March 20, 1978. Id., Attach. D at DER-ICE-000015-18 & Attach. E at DER-ICE-000026-30. On March 20, 1978, Petitioner's parents became naturalized United States citizens. Id., Attach. D at DER-ICE-000012 & Attach. E at DER-ICE-000023. Petitioner was, therefore, eighteen years and seven months old when his parents were naturalized on March 20, 1978.

On September 26, 2012, Petitioner was convicted by the Maricopa County Superior Court on one count of fraudulent schemes and artifices, a class 2 felony, in violation of section 13-2310 of the Arizona Revised Statutes; one count of illegal control of an enterprise, a class 3 felony, in violation of Arizona Revised Statutes § 13-2312; and one count of forgery, a class 4 felony, in violation of Arizona Revised Statutes § 13-2002. Id., Attach. F. Petitioner was sentenced to, *inter alia*, one year of incarceration and three years of probation. The court also ordered Petitioner to pay $1,430,428.22 in restitution to his victims.

---

[1] In his habeas petition Petitioner asserts that his parents applied for citizenship when Petitioner was sixteen years of age and that the adjudication of their petitions for citizenship took "almost" two years and then an additional eight months passed before they could be sworn-in as citizens. Doc. 3 at 4. Petitioner asserts that he "automatically" because a citizen because he was a lawful permanent resident at the time his parents were naturalized and because their applications for naturalization were approved prior to the date he became eighteen years of age..

1   On September 27, 2013, Petitioner was released from the custody of the Maricopa County Sheriff's Office to the custody of Immigration and Customs Enforcement ("ICE"). Id., Attach. G, Warrant for Arrest of Alien. On that same day, ICE issued a Notice to Appear, charging Petitioner with removability under section 237(a)(2)(A)(iii)2 of the Immigration and Nationality Act ("the Act"), as an alien, who any time after admission, has been convicted of an aggravated felony as defined by section 101(a)(43)(R) of the Act, an offense relating to commercial bribery, counterfeiting, forgery, or trafficking in vehicles the identification numbers of which have been altered, for which the term of imprisonment is at least one year. Id., Attach. H, Notice to Appear.

On September 27, 2013, Petitioner was transferred to the Eloy Detention Center for removal proceedings. He was detained without bond pursuant to section 236(c) of the Act. Id., Attach. I.

On or about October 4, 2013, the government withdrew the initial charge of removability under section 237(a)(2)(A)(iii) of the Act and charged Petitioner as an alien who, at any time after admission, has been convicted of an aggravated felony as defined in section 101(a)(43)(M) of the Act, an offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000. See id., Attach. J. On or about December 4, 2013, the government additionally charged Petitioner with removability based on an allegation that he had been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. Id., Attach. K. On April 10, 2014, an Immigration Judge ("IJ") conducted a bond hearing pursuant to Rodriguez v. Robbins, 715 F.3d 1127 (9th Cir. 2013). Id., Attach. l. On April 15, 2014, the IJ issued an order denying Petitioner's request for a change in custody status. Id., Attach I  Petitioner reserved appeal but has not appealed the IJ's decision.

On or about May 8, 2014, Petitioner submitted a motion for a second bond redetermination hearing. Id., Attach. M, On May 15, 2014, the IJ denied Petitioner's motion for a second bond redetermination hearing. Id., Attach. N. Petitioner has not appealed the IJ's bond decision.

1    On May 19, 2014, at a removal hearing before the IJ, Petitioner claimed that he
2 had derived United States citizenship through his naturalized United States citizen
3 parents. Id., Attach. O.  On May 20, 2014, ICE's Office of Enforcement and Removal
4 Operations ("ERO"), interviewed Petitioner in conjunction with his citizenship claim and
5 obtained a sworn statement from him. Id., Attach. P (Affidavit of Petitioner). Petitioner
6 admitted he had taken no steps to become naturalized. Id., Attach. P at DER-ICE-000093.

7    On July 29, 2014, Petitioner's attorney filed a Motion for Administrative Closure
8 with the IJ. Id., Attach. Q. Counsel argued that the proceedings should be
9 administratively closed so that Petitioner could file a Form N-600, "Application for
10 Certificate of Citizenship." Id., Attach. Q.  In the motion Petitioner acknowledged that he
11 is not legally eligible to derive citizenship through his naturalized United States citizen
12 parents under former section 321 of the Act because he was over the age of eighteen
13 years when they naturalized. Id., Attach. Q at DER-ICE-000097. Petitioner indicated that
14 he intended to file a Form N-600 with United States Citizenship and Immigration
15 Services ("USCIS") seeking declaratory action based on the argument that there was an
16 unreasonable delay in processing his parents' Form N-400s, which he believed were filed
17 in 1976.  Petitioner argued that, but for this delay, his parents would have become
18 naturalized United States citizen prior to his eighteenth birthday. Id., Attach. Q at DER-
19 ICE-000096-97.  Id., Attach. Q.

20   On August 19, 2014, the Department filed an opposition to Petitioner's Motion for
21 Administrative Closure, arguing that Petitioner was not likely to succeed on his N-600
22 application because (1) his parents delayed in applying to naturalize after they became
23 eligible to do so in August of 1974, and (2) that the Department believed that INS timely
24 adjudicated their applications, as the entire process only took approximately nine months.
25 Id., Attach. R.

26   On August 25, 2014, Petitioner appeared at a master calendar hearing with his
27 counsel. The Department served Petitioner with his mother's naturalization documents
28 obtained from her alien file at the National Records Center (NRC) on August 22, 2014.

See id., Attach. E. Petitioner's counsel requested time to review these documents, and the IJ therefore reset the matter to September 16, 2014. On August 29, 2014, ICE's Office of Chief Counsel (OCC) received Petitioner's father's naturalization documents from the National Records Center. See id., Attach. D.

At this time, the government has initiated removal proceedings against Petitioner, and Petitioner is in custody, however, no order of removal has been entered. On May 19, 2014, at a hearing before an IJ, Petitioner raised the claim that he had derived United States citizenship when his parents were naturalized. Id., Attach. O. Parallel to the removal proceeding, Petitioner filed the instant habeas petition, asking the Court to intervene in determining Petitioner's citizenship. Petitioner contends this Court should decide if he is entitled to naturalization because his citizenship status bears on his detention or release during his removal proceedings.

Noting, *inter alia*, that Petitioner has counsel in his removal proceedings but is pro se in this matter, Respondent argues that "Petitioner should be required to first exhaust his administrative remedies," citing Leonardo v. Crawford, 646 F.3d 1157, 1160 (9th Cir. 2011), while acknowledging that in Flores-Torres v. Mukasey, 548 F.3d 708, 710 (9th Cir. 2008), the Ninth Circuit Court of Appeals held that notwithstanding the provisions of 8 U.S.C. § 1252 with regard to jurisdiction, the District Court could exercise jurisdiction over a petitioner's claim to citizenship because the claim was not judicial review of a final order of removal. The exercise of jurisdiction over such a claim is a matter within the Court's discretion. See Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007). "Furthermore, this Court can offer no more relief to Petitioner than what is available to him administratively; indeed, Petitioner is offered greater relief through the administrative process. Whereas this Court may only decide the fact of Plaintiff's citizenship, it cannot make a determination as to his removal." Answer at 8.

Respondent further asserts:
> Should this Court decline to require prudential exhaustion, Petitioner's claim that he is a U.S. citizen should be denied as frivolous. The applicable law for transmitting citizenship to a child born abroad is the statute that was

in effect at the time of the child's birth. <u>United States v. Viramontes-Alvarado</u>, 149 F.3d 912, 915 (9th Cir. 1998). Former section 321(a) of the Immigration Act, as amended by the 1978 Amendments, provided in pertinent part that a child born outside of the United States automatically acquired citizenship if:
(1) Both parents were naturalized;
(2) Such naturalization took place while the child was under the age of eighteen years; and
(3) The child was residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence.

<u>Id.</u> at 9.

Respondent is correct that Petitioner does not meet the statutory requirements for citizenship. Petitioner was born in Syria on August 4, 1959, and turned 18 years old on August 4, 1977. <u>See</u> Answer, Attach. B. Petitioner's parents became naturalized citizens on March 29, 1978. <u>Id.</u>, Attach. D at DER-ICE-000012 & E at DER-ICE-000023. Accordingly, Petitioner does not meet the predicates for automatic citizenship through his parents' naturalization. In a motion to the Immigration Court, Petitioner acknowledged that "the naturalization of [his] parents was not recognized until March 20, 1978. By this time, the [Petitioner] was already eighteen (18) years old." <u>Id.</u>, Attach. Q at DER-ICE-000097. Although the INS approved his parents' applications to become naturalized citizens prior to Petitioner's majority, this act is not sufficient to fulfill the requirements to become a citizen, which includes a public oath. <u>See</u>, <u>e.g.</u>, <u>Okafor v. Gonzales</u>, 456 F.3d 531, 534 (5th Cir. 2006); <u>Abiodun v. Gonzales</u>, 461 F. 3d 1210, 1216 (10th Cir. 2006).

Petitioner asserts that his parents submitted their applications for naturalization in 1976 and, accordingly, that there was an unreasonable delay in the adjudication of those applications which should be construed in his favor and, therefore, that equitable consideration would allow him to achieve citizenship. However, the record evidence indicates that the applications for citizenship were filed in 1977 and, therefore, Petitioner's argument regarding equitable entitlement to adjustment of his status are predicated on an incorrect assertion of fact.

Accordingly,

**IT IS RECOMMENDED that** the section 2241 motion be **denied** and the matter **dismissed with prejudice**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length.

Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. See United States v. Reyna–Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of law in an order or judgment entered pursuant to the recommendation of the Magistrate Judge.

Dated this 7th day of January, 2015.

_____
Mark E. Aspey
United States Magistrate Judge